Alma S. MULLINS, Respondent,

v.

Arnold MULLINS, Appellant.

No. WD 60909.

Missouri Court of Appeals,
Western District.

Nov. 19, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Dec. 24, 2002.

John T. Kay, California, MO, for appellant.

Sarah L. Reeder, Joplin, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, ROBERT G. ULRICH, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Chief Judge.

Alma Mullins ("Wife") filed a petition for dissolution of marriage from Arnold Mullins ("Husband"). Husband filed no responsive pleadings and did not appear on the day of trial. Default judgment was entered granting the dissolution and awarding Wife $1,087 a month in nonmodifiable maintenance and $800 in attorney's fees. About ten months later, Husband filed a motion to set aside the default judgment. After a hearing, the trial court denied Husband's motion. Husband brings this appeal.

Husband and Wife married for the first time in December 1973, and the marriage was dissolved in April 1979. After the dissolution, the parties lived apart for about six months and then moved back in together. The couple remarried on June 1, 1998. In May 2000, Husband left the marital home, and on June 6, 2000, Wife filed a petition for dissolution.

On August 4, 2000, Wife filed her statement of marital and non-marital property and liabilities. Wife's attorney noticed the petition up for hearing on August 23, 2000, but a hearing was not held on that date. Wife's attorney later noticed the petition up for hearing on October 4, 2000. Husband did not appear and still had not filed any responsive pleadings. The trial court found Husband was in default, and Wife presented evidence and testimony in support of her petition.

Wife stated that she was living in the marital home and that Husband had moved out to live with another woman. Wife testified that she and Husband had three children but that all three were emancipated. She stated that neither she nor Husband owned real estate, and she asked that all of the property in the home be awarded to her.

Wife testified that her monthly expenses were $2,115 and that she was unable to support herself. She stated that she had a high school diploma but no additional education or training and that her work experience was limited to one year of work at Barne Press in 1994. Wife also testified

that she had an enlarged heart valve that would make it difficult for her to work full time.

The evidence also established that Husband's monthly income included $1,087 in social security disability payments and $1,100 from a Laborers Union pension. Husband also expected to receive a settlement from a workers' compensation claim that would be at least $39,000. Wife stated that Husband had agreed to pay her $1,087 each month in maintenance if she did not assert a claim against his worker's compensation settlement. Husband had been paying her that amount each month since the couple separated by depositing the money in a checking account.

On October 11, 2000, the trial court entered its judgment of dissolution. The judgment awarded Wife $1,087 per month of non-modifiable maintenance and $800 in attorney's fees. Wife was awarded all personal property in her possession, and, specifically, the bed, nightstand, three fans, refrigerator, table and chairs, gas heater, VCR and air conditioner. Husband was awarded the proceeds from his worker's compensation settlement, as well as a 1981 Chevrolet Truck, 1983 Chevrolet automobile, and a tractor. Husband was also ordered to pay several credit card accounts and a debt to a furniture store.

Ten months after the judgment was entered, on August 13, 2001, Husband filed his motion to set aside default judgment. Wife filed a response on September 18, 2001. On December 12, 2001, the parties appeared for a hearing, and Husband filed his first amended motion to set aside default judgment or, alternatively, for relief from judgment. The parties proceeded on the amended motion.

A hearing on the motion was held on December 12, 2001. On December 28, 2001, the trial court entered its judgment denying Husband's motion. Husband brings this appeal.

■ Husband argues in his first point that the trial court erred in denying his motion to set aside judgment because Husband demonstrated good cause and a meritorious defense pursuant to Rule 74.05.

We will affirm the trial court's decision not to set aside a default judgment "unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Reed v. Reed*, 48 S.W.3d 634, 639 (Mo.App. W.D.2001). A trial court has broad discretion in deciding whether to set aside a default judgment, and we will not interfere with the trial court's ruling in the absence of an abuse of discretion. *Tyree v. Tyree*, 978 S.W.2d 846, 849 (Mo.App. S.D.1998).

Husband's motion was denominated "First Amended Motion to Set Aside Default Judgment or Alternatively for Relief From Judgment." Rule 74.05(d) provides that a default judgment may be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown." The motion must be made "within a reasonable time not to exceed one year after the entry of the default judgment." *Rule 74.05(d)*.

Rule 74.06(b), on the other hand, allows relief from a final judgment for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Thus, Rule 74.05 sets forth the basis upon which a court may set aside a default judgment, while Rule 74.06 specifies under what circumstances a court may relieve a party from a final judgment. Each rule has its own standard for relief. *Cotleur v. Danziger*, 870 S.W.2d 234, 236 (Mo. banc 1994). Rule 74.06 requires the highest standard, which "gives 'effect to the interests in stability of final judgments and precedent.'" *Levine v. Hans*, 923 S.W.2d 357, 360 (Mo.App. W.D.1996) (quoting *Cotleur*, 870 S.W.2d at 236). "[T]here is a much greater liberality in reopening a judgment after a default than in reopening a judgment that comes after a hearing on the merits." *Cotleur*, 870 S.W.2d at 236.

In the case at bar, the trial court's judgment only refers to Rule 74.06. But the court did make findings of fact on the issues that form the basis of Husband's claims, and, as discussed, *infra*, those findings support a determination that Husband also failed to demonstrate good cause under Rule 74.05.

This court confronted a similar situation in *Gering v. Walcott*, 975 S.W.2d 496 (Mo. App. W.D.1998). In *Gering*, the respondents argued that the less stringent standard of Rule 74.05 should apply to their motion, while the appellants contended that Rule 74.06 was applicable. *Id.* at 498. The trial court's order did not indicate which Rule it had applied. *Id.* at 498 n. 1. On appeal, we determined that "[i]rrespective of whether the judgment was based on the merits, or was a default judgment, applying the less strict standard of Rule 74.05(d), . . . we conclude that the proof fails to establish good cause." *Id.* at 499. Proceeding in the same manner by applying the less stringent standard of Rule 74.05 to the case at bar, we likewise determine that the trial court did not abuse its discretion in finding that Husband failed to establish good cause.

Rule 74.05 defines good cause as "a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." Rule 74.05(d); *Reed v. Reed*, 48 S.W.3d 634, 640 (Mo.App. W.D. 2001). " 'Good cause' is to be interpreted liberally, 'not only to prevent a manifest injustice but to avoid a threatened one especially in cases tried without a jury where evidence on one side only is presented.'" *Young v. Safe–Ride Services*, 23 S.W.3d 730, 732 (Mo.App. W.D.2000) (quoting *Brueggemann v. Elbert*, 948 S.W.2d 212, 214 (Mo.App. E.D.1997)). In distinguishing between negligence and recklessness in the context of Rule 74.05, the court in *In re Marriage of Williams* stated the following:

> A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency. *Restatement, § 500, Comment g.* To be reckless, a person makes a conscious choice of his course of action, either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to a reasonable man. *Id.*

847 S.W.2d 896, 900 (Mo.App. S.D.1993) (quoting *Gibson by Woodall v. Elley*, 778 S.W.2d 851, 854 (Mo.App.1989) (quoting *Farm Bureau Town & Country Ins. Co. v. Turnbo*, 740 S.W.2d 232, 235 (Mo.App. 1987))).

Husband claims in his brief that his good cause for not responding to the petition was that he did not consult with an attorney and that he did not understand the legal nuances of the term "maintenance." Moreover, he contends that after Wife filed her petition, the parties attempted reconciliation four or five times and that Wife told him she was calling off the divorce. Husband argues that while

he may have been negligent in failing to answer the petition, his behavior does not constitute recklessness.

Wife acknowledged that she and Husband attempted to reconcile and that, throughout the summer of 2000, he spent the night with her on several occasions and at one point returned to the marital home with her for about a week. She also stated that she told him in August 2000 that the divorce was "called off." Subsequently, however, Husband asked Wife if they "were divorced yet," and Wife told him that it was "coming up."

At the hearing on the motion to set aside default judgment, Husband admitted that he did discuss the pending divorce with Wife and that, "I told her that I'd give her the money that I was getting off my Social Security until we got a divorce." Husband also acknowledged that he received a copy of the petition, that it requested maintenance, and that he failed to consult with an attorney until almost a year after judgment was entered. Husband also admitted that he received a copy of the judgment shortly after it was entered. More importantly, however, the record is clear that Husband paid Wife maintenance while the dissolution was pending and also continued to pay maintenance during the ten months prior to filing the motion to set aside the default judgment.

The trial court did not find Husband's testimony regarding Wife's statement that the divorce was "called off" credible. In its judgment, the court stated, *inter alia:*

> [T]he court finds no credible evidence that Respondent relied on that representation. Even if Respondent believed that the dissolution action had been dismissed, he was put on notice when he received a copy of the Judgment that it had not been dismissed. Still, Respondent waited ten months before requesting relief.

The court also found that Husband's payment of the exact amount of maintenance ultimately ordered by the dissolution judgment both before and for ten months after the judgment was indicative of Husband's belief that the amount was fair. Husband's continued payment of maintenance also belies his claim that he did not believe that Wife intended to pursue the dissolution.

Based on the record before us, Husband's failure to consult with an attorney constitutes more than mere negligence. *See Great S. Sav. & Loan Ass'n v. Wilburn,* 887 S.W.2d 581, 584 (Mo. banc 1994). In *Great Southern,* the Missouri Supreme Court held that a trial court could properly determine that a party who had failed to hire an attorney until after his answer was due had "recklessly or intentionally impeded the judicial process." *Id.* Conversely, the Court determined that the trial court erred in determining that another defendant did not have good cause where the defendant had hired an attorney prior to the end of her answer period and, once default judgment was entered against her, "moved promptly" to set the judgment aside. *Id.* In the case at bar, not only did Husband fail to consult with an attorney prior to the end of his answer period and for three months thereafter until the judgment was entered, but he waited at least ten more months before challenging the judgment.

In *Crain v. Crain,* a defendant argued that while he did not behave prudently by ignoring a summons to appear, he was not reckless because his wife did not mention the scheduled hearing to him, and he did not receive notice of the hearing date. 19 S.W.3d 170, 175 (Mo.App. W.D.2000). We affirmed "the longstanding rule ... that 'once properly served, a party who defaults

is charged with notice of all subsequent proceedings in the case.' " *Id.* at 174 (quoting *Bredeman v. Eno,* 863 S.W.2d 24, 26 (Mo.App. W.D.1993)). We also determined that "Husband's argument ignores the clear warnings contained in the summons and attempts to impose the burden on the adverse party to protect himself from his own negligence in failing to preserve his rights." *Id.* at 175.

■ When a litigant fails to respond to a lawsuit in any manner, such conduct constitutes "a conscious choice to ignore the litigation and, as such, amount[s] to reckless behavior." *Gering,* 975 S.W.2d at 499. In this case, Husband " 'ignored a known risk' of a default judgment and was thereby reckless." *In re Marriage of Williams,* 847 S.W.2d at 901. The record supports a finding that Husband was " 'lacking in caution' and ... 'deliberately courting danger' in the futile hope and expectation that the [wife] would not go forward with the case." *Id.* And the trial court certainly did not abuse its discretion in finding that Husband did not rely on Wife's statement that the divorce was "called off." Husband's decision not to consult with an attorney was reckless and not merely negligent. Consequently, Husband did not demonstrate good cause for setting aside the default judgment.

■ The conditions of Rule 74.05(d), " 'good cause' and 'meritorious defense,' are in the conjunctive and even if a movant shows a meritorious defense, if good cause is not also established, the trial court does not abuse its discretion by failing to set aside the judgment." *Id.* at 899. Therefore, having determined that Husband failed to establish good cause, we need not address whether he presented sufficient facts to show a meritorious defense. *Id.* Point I is denied.

■ In his second point, Husband claims the trial court erred in failing to grant him relief from the judgment pursuant to Rule 74.06(b) because: (a) Wife procured the judgment through misrepresentation and misconduct; (b) the award of attorney's fees was void; and (c) the portion of the judgment granting maintenance was plain error.

Husband's assertion that Wife procured the judgment through misrepresentation and misconduct is essentially the same argument he made in Point I, and we need not address it further. We must, however, address Husband's claim that the trial court's award of $800 in attorney's fees to Wife was void.

■ One of the grounds for relief in Rule 74.06(b) is that "the judgment is void." Here, Husband argues that Wife did not demand attorney's fees in her petition and that the award of attorney's fees is, therefore, void. Wife acknowledges that she did not request attorney's fees until the dissolution hearing. "Relief granted on default may not be other or greater than that which she shall have demanded in the petition as originally filed and served on defendant." *Kocsis v. Kocsis,* 28 S.W.3d 505, 509 (Mo.App. E.D. 2000). This is consistent with those cases stating that attorney's fees can be awarded in dissolution cases even though not prayed for in the petition, but only if the parties are provided adequate notice and an opportunity to be heard. *See In re Marriage of Haubein,* 726 S.W.2d 433, 437 (Mo.App. S.D.1987); *King v. King,* 694 S.W.2d 278, 279 (Mo.App. E.D.1985). This is so because in the default setting the petition is what the defendant has notice of and is defaulting to. *See Picou v. Picou,* 800 S.W.2d 754, 755 (Mo.App. E.D.1990) and *Daily v. Daily,* 912 S.W.2d 110, 114 (Mo.App. W.D.1995).

In this case, Wife did not request attorney's fees in her petition. Husband was not given any notice that attorney's fees were contemplated or would be requested in the case. Therefore, the trial court lacked authority to enter the award, and it is void. See *Kocsis*, 28 S.W.3d at 509; *Daily*, 912 S.W.2d at 114; *Picou*, 800 S.W.2d at 755; *Vonsmith v. Vonsmith*, 666 S.W.2d 426, 428 (Mo.App. E.D.1983). Accordingly, the trial court's award of $800 in attorney's fees to Wife is reversed. *Kocsis*, 28 S.W.3d at 510.

■ Husband makes a similar argument concerning the trial court's award of nonmodifiable maintenance. He claims that the trial court exceeded its jurisdiction in awarding nonmodifiable maintenance because, while Wife's petition requested maintenance, Wife did not request nonmodifiable maintenance. Husband argues further that the award constitutes plain error because, in order to be entitled to nonmodifiable maintenance, Wife must demonstrate that she could never become self-sufficient. Husband claims that Wife did not meet this burden.

Husband's contention is devoid of merit. Section 452.335 governs the trial court's authority to grant maintenance in a dissolution action. Subsection one of the statute provides that maintenance may be awarded when the spouse seeking maintenance: "(1) [l]acks sufficient property ... to provide for his reasonable needs; and

(2) is unable to support himself...." [1] Subsection three of the statute also provides that the order shall state whether maintenance "is modifiable or nonmodifiable."

■ "[A] maintenance order providing that it is 'nonmodifiable' must be justified by the facts and circumstances of that particular case." *In re Marriage of Lawry*, 883 S.W.2d 84, 90 (Mo.App. S.D.1994). Wife requested maintenance in her petition, and the trial court determined that Wife was entitled to nonmodifiable maintenance. Husband has provided no authority for his contention that Wife was required to state in her petition that she was seeking nonmodifiable maintenance. The evidence established that Wife had minimal work experience and that she had a heart condition that prevented her from working. The trial court determined that Wife was in need of maintenance and that Husband had the ability to pay. Moreover, Husband had agreed to pay maintenance and had in fact paid Wife maintenance prior to and after the dissolution. The trial court did not abuse its discretion when it concluded that Husband had not demonstrated entitlement to relief under Rule 74.06(b) as to the maintenance award.

In summary, Husband failed to establish good cause under Rule 74.05. The trial court did not abuse its discretion in denying his motion to set aside the default judgment. However, the portion of the

---

**1.** Subsection two provides that the trial court is to consider all relevant factors in making its award, including:

(1) The financial resources of the party seeking maintenance ...

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

judgment awarding Wife $800 in attorney's fees is void and Husband is entitled to relief from that portion of the judgment. Accordingly, the portion of the dissolution judgment awarding Wife $800 in attorney's fees is reversed. In all other respects, the judgment of the trial court is affirmed.[2]

All concur.

---

2. Wife filed a motion for attorney's fees with this court on July 24, 2002, asking us to award her $2,283.90 for the cost of defending this appeal. The motion was taken with the case. The motion is denied.